**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION**

ROZA TAWIL,

        Plaintiff,

v.                             CASE NO. 4:22cv440-RH-MAF

FINANCIAL INDUSTRY
REGULATORY AUTHORITY, INC.,

        Defendant.

_____/

**FINRA'S MEMORANDUM IN OPPOSITION TO PLAINTIFF'S
MOTION FOR TEMPORARY RESTRAINING ORDER**

      Defendant Financial Industry Regulatory Authority, Inc. ("FINRA") opposes

Plaintiff's Motion for a Temporary Restraining Order ("Plaintiff's Motion").[1]   In

support of its opposition, FINRA states as follows:

---

[1]     In addition to Plaintiff's Motion, Plaintiff incorporated a Motion for
Preliminary Injunction into her Complaint.  *See* Compl., ¶¶ 66-78, ECF No. 6.  To
the extent N.D. Fla. Loc. R. 7.1(E) would require FINRA to respond to a motion
incorporated into a pleading, FINRA adopts the arguments in this opposition to
oppose the "Motion for a Preliminary Injunction."

**INTRODUCTION**

FINRA is a private, not-for-profit self-regulatory organization ("SRO") that conducts the day-to-day regulation of the national securities markets pursuant to statutory authority delegated to it by Congress, with oversight from the Securities and Exchange Commission ("SEC").  FINRA does not issue, cancel, settle, or clear securities that are traded in the national securities markets.  Instead, FINRA regulates its members that trade and quote securities in the national securities markets, including on a national securities exchange (*e.g.*, NASDAQ, New York Stock Exchange, Cboe) and in the over-the-counter ("OTC") market, to ensure they comply with FINRA rules, the federal securities laws, and the rules and regulations thereunder.  Equity securities that are not listed on a national securities exchange may be traded and quoted in the OTC market ("OTC Equity Securities").

This case relates to OTC Equity Securities—formerly traded on the OTC market and identified with the OTC symbol MMTLP—that were the subject of a Company-Related Action by Meta Materials, Inc. ("Meta") in which Meta spun off a portion of its business into a new company.[2]  The terms of Meta's Company-Related Action provided that: (1) individuals that held Series A Preferred Non-

---

[2]     "Company-Related Actions" are actions taken by publicly-traded companies that may affect a company's stock.  Examples of Company-Related Actions include mergers, changes to the name of an issuer, a new or modified trading symbol, a dividend, and a stock split.

Voting shares of Meta ("the MMTLP shares"), would receive an equal number of shares in the new, public reporting company, Next Bridge Hydrocarbons, Inc. ("Next Bridge"); and (2) Meta would immediately cancel the MMTLP shares after the spin-off.

Pursuant to SEC and FINRA rules, companies that have issued OTC Equity Securities, like Meta's MMTLP shares, may request that FINRA process documentation related to Company-Related Actions to facilitate the orderly trading and settlement of OTC Equity Securities. FINRA reviews these requests and notifies the OTC marketplace of the Company-Related Actions, unless FINRA determines the request is deficient, by announcing the Company-Related Actions in the FINRA Daily List publication. Here, FINRA announced Meta's Company-Related Action in the FINRA Daily List publication on December 6, 2022 (as modified on December 8, 2022). The announcement included information about the spin-off of Next Bridge shares and the deletion of the MMTLP symbol (with an effective date of December 13, 2022). As announced, FINRA deleted the MMTLP symbol on December 13, 2022. Next Bridge announced that on December 14, 2022, the spin-off from Meta was completed and that the MMTLP shares were cancelled. FINRA was not a party to Meta's Company-Related Action, and FINRA had no role in distributing the Next Bridge shares or in canceling the MMTLP shares.

As part of FINRA's regulatory oversight responsibilities for the OTC market, FINRA is also expressly authorized to direct its members to halt trading and quotation activity in OTC Equity Securities when FINRA determines that doing so is necessary to protect investors and the public interest.   FINRA exercised this authority in connection with the trading of MMTLP shares in the days leading up to the spin-off to address the potential significant uncertainty in the settlement and clearance process for MMTLP shares that were the subject of Meta's Company-Related Action.   On December 9, 2022, FINRA notified its members to halt trading and quoting of MMTLP shares and informed them that the halt would end when the symbol was deleted on December 13, 2022.

In response to the trading halt, Plaintiff initiated this action against FINRA. The Complaint, filed on December 14, 2022, alleges violations of the Sherman Act and the Securities Exchange Act, and incorporates a motion for preliminary injunction.   Then, on December 16, 2022, two days after the spin-off transaction was finalized, Plaintiff filed the instant motion with the Court.   Plaintiff's Motion seeks a Temporary Restraining Order to enjoin the replacement, removal, deletion, or disposal of MMTLP shares "until an accounting of all actual, short sale, borrowed, loaned, and any and all other forms of Series A Preferred Dividend MMTLP have has [sic] been verified and the liquidity of stock has been restored . . . ."  Pl.'s Mot. 2, ECF No. 8.   Plaintiff, however, does not and cannot demonstrate that any

preliminary injunctive relief, including the requested restraining order, is appropriate.  First, notwithstanding her conclusory assertion to the contrary, Plaintiff does not have a likelihood of success on the merits because, among other reasons, immunity bars Plaintiff's claims.   Second, Plaintiff did not allege any actual or imminent harm, which is necessary in order to obtain injunctive relief.   Third, Plaintiff failed to establish that any purported injury would be remedied by the requested relief.  Finally, Plaintiff failed to establish that the issuance of a temporary restraining order would serve the public interest.   Accordingly, Plaintiff's request for a temporary restraining order should be denied.[3]

## FACTUAL BACKGROUND

### I.   FINRA's Role in Regulating the Securities Industry

FINRA[4] is a private, not-for-profit Delaware corporation and SRO registered with the SEC as a national securities association pursuant to the Maloney Act of 1938, 15 U.S.C. §§ 78o-3, *et seq.*, amending the Securities Exchange Act of 1934, 15 U.S.C. §§ 78a, *et seq.* ("Exchange Act").   As an SRO, FINRA is part of the Exchange Act's comprehensive plan for regulating the securities markets.  *See* 15

---

[3]      FINRA intends to file a motion to dismiss the Complaint because, among other things, the court lacks personal jurisdiction over FINRA, and Plaintiff has failed to state a claim upon which relief can be granted.

[4]      FINRA was formerly known as the National Association of Securities Dealers, Inc. ("NASD").  In 2007, NASD changed its name to FINRA.  This name change does not impact the precedential value of the NASD cases cited herein.

U.S.C. §§ 78q, 78s; *Desiderio v. NASD, Inc.*, 191 F.3d 198, 201 (2d Cir. 1999); *cf. PennMont Sec. v. Frucher*, 586 F.3d 242, 245 (3d Cir. 2009) (discussing comprehensive plan for regulation of the national securities markets).   FINRA's regulatory duties are imposed by Congress and require FINRA to conduct the daily regulation and administration of the national securities markets. *See, e.g., Turbeville v. Fin. Indus. Reg. Auth.*, 874 F.3d 1268, 1270-71 (11th Cir. 2017); *Empire Fin. Grp., Inc. v. Fin. Indus. Reg. Auth., Inc.*, No. 08-80534-CIV, 2009 WL 10644856, at \*2 (S.D. Fla. Jan. 15, 2009); *cf. DL Capital Grp., LLC v. Nasdaq Stock Mkt., Inc.,* 409 F.3d 93, 95 (2d Cir. 2005) (discussing NASD); *Domestic Sec., Inc. v. SEC*, 333 F.3d 239, 241-42 (D.C. Cir. 2003) (same); *Barbara v. N.Y. Stock Exch., Inc.*, 99 F.3d 49, 59 (2d Cir. 1996), *abrogated in part on other grounds by Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Manning*, 136 S. Ct. 1562 (2016) (discussing NYSE, another SRO).

Among its regulatory obligations, the Exchange Act requires FINRA to establish rules "designed to prevent fraudulent and manipulative acts and practices, to promote just and equitable principles of trade, to foster cooperation and coordination with persons engaged in regulating, clearing, settling, processing information with respect to, and facilitating transactions in securities, . . . and, in general, to protect investors and the public interest. . . ."  15 U.S.C. § 78o-3(b)(6).

With a few exceptions not relevant here, the SEC must approve all FINRA rules before they are implemented. *See id.* § 78s(b).

Pursuant to authority delegated under the Exchange Act, FINRA performs several regulatory functions in the OTC market, including among others, maintaining the symbols directory for OTC Equity Securities, *see https://otce.finra.org/otce/symbol-directory,* and adopting rules regarding quoting and trading in OTC Equity Securities. *See* FINRA Rule 6400 Series. These FINRA rules, and amendments thereto, are filed with the SEC. *See, e.g.,* Exchange Act Release No. 34-68874, 78 Fed. Reg. 10655 (Feb. 8, 2013) (approving amendments to FINRA Rule 6440); Exchange Act Release No. 34-62434, 75 Fed. Reg. 39603-01 (July 9, 2010) (approving amendments to FINRA Rule 6490). FINRA Rule 6440 authorizes FINRA to direct its members to halt trading and quoting in OTC Equity Securities to protect investors and the public interest. Under that rule, FINRA may halt trading in an OTC Equity Security if, among other reasons, FINRA "determines that an extraordinary event has occurred or is ongoing that . . . has caused or has the potential to cause major disruption to the marketplace or significant uncertainty in the settlement and clearance process." FINRA Rule 6440(a)(3). In addition, to foster cooperation and coordination in the clearing and settling of transactions in OTC Equity Securities and to protect investors and the public interest as required by the Exchange Act, FINRA Rule 6490 specifies the requirements for requesting that

FINRA process announcements for Exchange Act Rule 10b-17 actions and other Company-Related Actions for OTC Equity Securities.  When FINRA processes documentation for a Company-Related Action, it announces the action on the FINRA Daily List publication.  The announcement will include information about the Company-Related Action, such as the amount or ratio of a dividend or stock split, the new name of an issuer, or a new symbol, as applicable and appropriate.

## II.    The Meta Company-Related Action

According to the Next Bridge Prospectus, which is attached as Exhibit B to Plaintiff's Complaint, Meta intended to spin off a portion of its business into a "an independent public reporting company"—Next Bridge.  *See generally* Compl., Ex. B, ECF No. 6.  As part of the spin-off transaction, individuals who held MMTLP shares at the close of business on December 12, 2022,[5] would receive an equal number of shares of the common stock of Next Bridge.[6]   *Id.*   In addition,

---

[5]     Plaintiff's verified Complaint does not include an allegation that Plaintiff actually held MMTLP shares on December 12, 2022.  *See generally* Compl., ECF No. 6.  Plaintiff does, however, allege that she purchased shares of Torchlight Energy Resources ("Torchlight") in 2021 and received MMTLP shares as a result of the merger between Torchlight and Meta.  *See id.* ¶¶ 25-27.  Thus, where Plaintiff's verified Complaint does not allege that she sold her MMTLP shares prior to the MMTLP trading halt, FINRA assumes for the sake of this argument (but does not admit this fact to be true), that Plaintiff held MMTLP shares on December 12, 2022.

[6]     The Next Bridge Prospectus explains that the Next Bridge shares will be distributed by book-entry form and that Next Bridge "expect[s] that it will take the

shareholders were notified that "immediately after the Spin-Off, all shares of Series A Non-Voting Preferred Stock of Meta [the MMTLP shares] shall be cancelled." *Id.*[7]

On December 6, 2022, pursuant to FINRA Rule 6490, FINRA announced in the Daily List publication that MMTLP shareholders with settled positions as of December 12, 2022, would receive one share of Next Bridge for every one share of MMTLP held ("the Announcement").   Compl., Ex. C, ECF No. 6.   The Announcement explained that any purchases of MMTLP shares after December 8, 2022, would not receive the Next Bridge distribution. *Id.* In the Announcement, as modified on December 8, 2022, FINRA indicated that the MMTLP symbol would be deleted on December 13, 2022.   Compl., Ex. C & Ex. D, ECF No. 6.

On December 13, 2022, FINRA deleted the MMTLP symbol.   Next Bridge announced that the spin-off was finalized on December 14, 2022. *See* Next Bridge Hydrocarbons Press Release (Dec. 20, 2022), *available at* [https://uploads-ssl.webflow.com/6169e69d0075ec7c66221a8b/63a376a38add926dd316f36a_NBH%20News%20Release%2012-20-2022%20.pdf](https://uploads-ssl.webflow.com/6169e69d0075ec7c66221a8b/63a376a38add926dd316f36a_NBH%20News%20Release%2012-20-2022%20.pdf) ("Next Bridge Press Release").   It

---

distribution agent up to two weeks to electronically issue shares of [its] Common Stock."  Compl., Ex. B at 10 (page 4 of Next Bridge Prospectus), ECF No. 6.

[7]      When a company cancels shares, those shares become null and void and cease to exist.  FINRA will delete the trading symbol for a security upon notice that the security has been cancelled.

is also FINRA's understanding that the MMTLP shares were cancelled.  *See* Next

Bridge Investor FAQs, *available at*

https://www.nextbridgehydrocarbons.com/investors ("Next Bridge FAQs").

## III.   The Trading Halt

As discussed above, FINRA Rule 6440 authorizes FINRA to direct its

members to halt trading and quoting in OTC Equity Securities to protect investors

and the public interest, including where FINRA "determines that an extraordinary

event has occurred or is ongoing that . . . has caused or has the potential to cause

major disruption to the marketplace or significant uncertainty in the settlement and

clearance process."  FINRA Rule 6440(a)(3).  In light of the timing of Meta's

Company-Related Action and the imminent cancellation of the MMTLP shares,

FINRA exercised its authority under the rule and directed its members to halt

trading and quoting in the MMTLP shares because of the potential uncertainty in

the settlement and clearance process for any transactions executed after December

8, 2022.  Compl., Ex. E (FINRA's December 9, 2022 Notice), ECF No. 6.

Specifically, pursuant to SEC Rule, the industry standard settlement and clearance

cycle takes two business days.  17 CFR § 240.15c6-1.  Here, because of this

standard two-day settlement cycle under the federal securities laws, transactions

executed in MMTLP shares *after* Thursday, December 8, 2022, generally would

not be able to settle by Monday, December 12, 2022.  Investors whose purchases

of MMTLP shares did not settle by December 12, 2022, would not be record owners of MMTLP shares and thus would not be identified as entitled to receive the distribution of Next Bridge shares as part of the spin-off.[8]  In addition, all MMTLP shares would be immediately cancelled by Meta after the spin-off. Finally, the Next Bridge Prospectus explained that the common stock of Next Bridge "is not and will not be publicly traded and will not be eligible for electronic transfer through the Depository Trust Company book-entry system or any other established clearing corporation."  Compl., Ex. B at 1, ECF No. 6.  In light of these facts, FINRA determined that further trading in MMTLP *after* December 8, 2022, had "the potential to cause significant uncertainty in the settlement and clearance process for shares in MMTLP."  Compl., Ex. E, ECF No. 6.  On December 9, 2022, FINRA directed its members to halt trading and quoting in MMTLP shares and explained that the halt "will end concurrent with the deletion of the symbol effective Tuesday, December 13, 2022."  *Id.*

---

[8]      The Next Bridge FAQs, *supra,* explain that "[t]he record date for the spin-off . . . was December 12, 2022," and that date "establishes who was eligible to receive the [Next Bridge] common shares on the distribution date, which was December 14, 2022.  If a shareholder held . . . the MMTLP shares, at 5:00 p.m. E.T. on the record date, that shareholder was entitled to receive [Next Bridge] common shares on a 1-for-1 basis on the distribution.  All MMTLP [shares have] been cancelled."

11

## IV.   Plaintiff's Motion Does Not Present an Emergency

On December 16, 2022—two days after the Meta transaction was finalized—Plaintiff filed the instant motion seeking a Temporary Restraining Order requiring FINRA to provide "an accounting of all actual, short sale, borrowed, loaned, and any and all other forms of Series A Preferred Dividend MMTLP and Next Bridge Hydrocarbon shares for verification," and to enjoin "any replacement, removal, deletion or otherwise unilateral disposal of Series A Preferred stock identified as MMTLP . . . and reissue any hitherto deleted until an accounting . . . has been verified and the liquidity of the stock has been restored."  Pl.'s Mot. 3, ECF No. 8.  On December 22, 2022—twelve days after Plaintiff initiated this action, eight days after the spin-off was completed, and six days after Plaintiff's Motion was filed—Plaintiff served Plaintiff's Motion upon FINRA's registered agent in Tallahassee, Florida.  While Plaintiff seeks leave to present oral argument "due to the emergency nature of the motion," *id.* at 2, Plaintiff's Motion fails to "explain the emergency," as required by Local Rule 7.1(L).  Further, Next Bridge has announced that the spin-off transaction is complete.  Accordingly, Plaintiff cannot establish that there is an emergency that needs to be addressed by this Court.

# ARGUMENT

## I.    Standard of Review

To obtain a temporary restraining order, a party must demonstrate that "(1) [there is] a substantial likelihood of success on the merits; (2) [ ] irreparable injury will be suffered if the relief is not granted; (3) [  ] the threatened injury outweighs the harm the relief would inflict on the non-movant; and (4) [ ] entry of the relief would serve the public interest." *Schiavo (ex. rel Schindler) v. Schiavo*, 403 F.3d 1223, 1225-26 (11th Cir. 2005); *see also Levi Strauss & Co. v. Sunrise Int'l Trading Inc.*, 51 F.3d 982, 985 (11th Cir. 1995) (applying the test to a preliminary injunction in a Lanham Act case); *Tiffany (NJ) LLC v. Individuals, Bus. Entities, & Unincorporated Ass'ns Identified on Schedule "A"*, 2022 WL 4767167, at *2 (S.D. Fla. July 18, 2022) (same).  Plaintiff has not and cannot meet this burden, and the motion for a TRO should be denied.

## II.   Plaintiff Has Not Asserted Claims Upon Which There is a Likelihood of Success on the Merits

Plaintiff's Complaint alleges violations of the Exchange Act and the Sherman Act.  Neither claim can succeed on the merits.  First, as an SRO, FINRA is absolutely immune from claims related to its market regulatory activities; therefore, both claims fail.  The Exchange Act claim also fails because there is no private right of action against FINRA for alleged violations of the Exchange Act or its own rules.  Further, the Sherman Act claim is precluded because application of the antitrust laws

conflicts with the authority delegated to FINRA in the Exchange Act to regulate the national securities markets.

### A.   FINRA Has Absolute Immunity for Its Regulatory Functions

FINRA is absolutely immune from suit for any claims regarding regulatory functions performed "under the aegis of the Exchange Act's delegated authority." *Sparta Surgical Corp. v. NASD, Inc.*, 159 F.3d 1209, 1214 (9th Cir. 1998), *abrogated in part on other grounds by Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Manning,* 136 S. Ct. 1562 (2016); *see also D'Alessio v. NYSE, Inc.,* 258 F.3d 93, 104 (2d Cir. 2001) (FINRA, by analogy to the NYSE, is "immune from liability for claims arising out of the discharge of its duties under the Exchange Act.").  The Eleventh Circuit recognizes this immunity.  *See, e.g., Weissman v. NASD, Inc.*, 500 F.3d 1293, 1296 (11th Cir. 2007) ("Because they perform a variety of vital governmental functions, but lack the sovereign immunity that governmental agencies enjoy, SROs are protected by absolute immunity when they perform their statutorily delegated adjudicatory, regulatory, and prosecutorial functions.").  Here, FINRA's issuance of the trading halt was a regulatory function performed in accordance with FINRA's rules and the authority delegated to it in the Exchange Act.

To determine whether absolute immunity applies to an SRO's conduct, courts "look to the objective nature and function of the activity for which the SRO seeks to claim immunity." *Weissman,* 500 F.3d at 1297.  Plaintiff admits that FINRA

has the authority to issue trading halts.  Compl. ¶ 71, ECF No. 6.  Thus, there is no dispute that FINRA has the authority and discretion to halt trading in accordance with FINRA rules, including where an extraordinary event "caused or had the potential to cause significant uncertainty in the settlement and clearance process for shares in MMTLP."  Compl., Ex. E, ECF No. 6.  FINRA's exercise of its authority to halt trading is a regulatory function, and FINRA is therefore immune from suit.

The immunity afforded to FINRA in performing its regulatory functions is absolute.  *In re Series 7 Broker Qualification Exam Scoring Litig.,* 548 F.3d 110, 114 (D.C. Cir. 2008) (an SRO is "absolutely immune from suit for the improper performance of regulatory, adjudicatory, or prosecutorial duties delegated by the SEC").  This form of absolute immunity is "an integral part of the American system of securities regulation."  *Dexter v. Depository Tr. & Clearing Corp.*, 406 F. Supp. 2d 260, 263 (S.D.N.Y. 2005), *aff'd*, 219 F. App'x 91 (2d Cir. 2007).  The SEC depends on FINRA and other SROs to perform the day-to-day functions of examining qualifications, registering personnel, disciplining infractions, and regulating market activity.  These functions "'would, in other circumstances, be performed by a government agency.  Yet government agencies, including the SEC, would be entitled to sovereign immunity for all suits for money damages.'"  *Sparta Surgical*, 159 F.3d at 1214 (quoting *Barbara*, 99 F.3d at 59).

Accordingly, based on the well-recognized doctrine of absolute immunity, Plaintiff has no likelihood of success on the merits of her claims.

## B.     The Exchange Act Does Not Provide a Private Right of Action

Moreover, Plaintiff's Exchange Act claim fails on other grounds.  Plaintiff asserts that FINRA aided and abetted a violation of §10(b) of the Exchange Act. Compl. ¶¶ 62-65, ECF No. 6.  However, neither the Exchange Act nor any other statute provides for a private cause of action against an SRO, like FINRA, for acts or omissions in connection with its duties as a securities regulator.  *Desiderio*, 191 F.3d at 208; *Feins v. Am. Stock Exch., Inc.*, 81 F.3d 1215, 1222-24 (2d Cir. 1996). Here, while Plaintiff alleges that FINRA acted in contravention of the Next Bridge Prospectus purportedly approved by the SEC, Compl. ¶ 63, ECF No. 6,[9] Plaintiff admits that FINRA has authority to issue trading halts, *id.* ¶ 71.  Thus, Plaintiff's Exchange Act claim amounts to a complaint about *how* FINRA conducted its regulatory duties, and Plaintiff cannot state a claim against FINRA for such alleged

---

[9]     It is worth noting that Plaintiff's verified Complaint represents to the Court that the SEC "approved the attached prospectus."  Compl. ¶ 63, ECF No. 6. However, the Next Bridge Prospectus, attached to the verified Complaint as Exhibit B, contains the following legend and warning:  "Neither the Securities and Exchange Commission nor any state securities commission has approved or disapproved these securities or determined if this prospectus is truthful and complete.   Any representation to the contrary is a criminal offense."  Compl., Ex. B, at 1 (original legend and warning capitalized and bolded), ECF No. 6.

violations of FINRA's rules. Accordingly, Plaintiff has no likelihood of success on the merits of her Exchange Act claim.

### C.     The Sherman Act Claim is Precluded by the Exchange Act

The Supreme Court has found that the securities laws preclude application of the antitrust laws where "the two are 'clearly incompatible.'" *Credit Suisse Sec. (USA) LLC v. Billing,* 551 U.S. 264, 275 (2007).  To determine whether there is "sufficient incompatibility to warrant an implication of preclusion," courts look to the following factors: "(1) the existence of regulatory authority under the securities law to supervise the activities in question; (2) evidence that the responsible regulatory entities exercise that authority; . . . (3) a resulting risk that the securities and antitrust laws, if both applicable, would produce conflicting guidance, requirements, duties, privileges, or standards of conduct[; and] (4) . . . the possible conflict affected practices that lie squarely within an area of financial market activity that the securities law seeks to regulate." *Id.* at 275-76 (citing *Gordon v. N.Y. Stock Exch.*, 422 U.S. 659 (1975); *U.S. v. NASD, Inc.*, 422 U.S. 694 (1975)).  Here, Plaintiff alleges that the trading halt "unreasonably restrain[ed] trade" and "interfered with the purchase and return of borrowed shares." Compl. ¶¶ 58, 61, ECF No. 6.  Plaintiff also admits, however, that FINRA is authorized to halt trading. *Id.* ¶ 71. Further, FINRA's announcement of a trading halt is a regulatory function that FINRA is authorized to perform in accordance with the Exchange Act and FINRA

Rule 6440, which was approved by the SEC, to protect investors and the public interest.  Accordingly, Plaintiff's Sherman Act claim is precluded by the Exchange Act, which authorizes FINRA to regulate the national securities markets.

Thus, the Sherman Act claim cannot succeed on the merits.

*          *          *

For these reasons, Plaintiff cannot meet her burden of establishing a substantial likelihood of success on the merits.

## III.   Plaintiff Fails to Allege Any Actual and Imminent Injury

An actual showing of irreparable injury is "'the sine qua non of injunctive relief.'"  *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000) (citation omitted) (citing cases).  Here, Plaintiff does not allege any injury, much less actual and imminent harm.  *See generally* Compl., ECF No. 6.  Instead, she merely makes the conclusory allegation that there is  a "likelihood of irreparable harm."  Compl. ¶ 70, ECF No. 6.  The Eleventh Circuit has found that irreparable injury "must be neither remote nor speculative, but actual and imminent." *Siegel,* 234 F.3d at 1176-77 (citation omitted); *see also Chacon v. Granata*, 515 F.2d 922, 925 (5th Cir. 1975) ("An injunction is appropriate only if the anticipated injury is imminent and irreparable.").  Plaintiff has failed to allege any facts to establish that irreparable harm is actual or imminent.  Thus, Plaintiff has failed to meet her burden of establishing irreparable harm.

**IV.    Any Purported Injury Would Not be Remedied by Injunctive Relief**

Plaintiff's failure to allege any actual or imminent harm weighs in favor of denying Plaintiff's Motion because the Court cannot determine whether any purported injury would outweigh the harm inflicted by the requested relief. Moreover, "[t]he purpose of preliminary injunctive relief is to preserve the status quo between the parties and prevent irreparable injury until the merits of the lawsuit itself can be reviewed." *Hernandez v. Inch,* No. 3:20cv3650/MCR/EMT, 2021 WL 5361086, *1 (N.D. Fla. Oct. 8, 2021); *see also Bloedorn v. Grube*, 631 F.3d 1218, 1229 (11th Cir. 2011).  To issue an order requiring FINRA to provide an accounting of all MMTLP shares does not preserve the status quo between Plaintiff and FINRA. Instead, such an order would provide Plaintiff a remedy she is seeking in this case. *See* Compl., Prayer For Relief ¶ 2, ECF No. 6; *see also Zaki Kulaibee Estab. v. McFliker,* 771 F.3d 1301, 1310 (11th Cir. 2014) (an accounting is a "remedy [ ] grounded in equity").

Further, to the extent Plaintiff seeks to enjoin any "replacement, removal, deletion or otherwise unilateral disposal" of MMTLP shares, Pl.'s Mot. 3, ECF No. 8, FINRA cannot provide such relief and events that occurred prior to the filing of Plaintiff's Motion prevent the requested relief.  Specifically, FINRA did not issue the MMTLP shares, and FINRA was not a party to the transaction outlined in the Next Bridge Prospectus.  *See* Compl., Ex. B, ECF No. 6.  Indeed, after FINRA

19

announced Meta's Company Related Action on FINRA's Daily List publication,
FINRA had no role in distributing the Next Bridge shares or in Meta's cancellation
of the MMTLP shares.  Plaintiff does not and cannot establish that FINRA had any
further role in the transaction or that FINRA could modify or prevent the spin-off.
Further, it is FINRA's understanding that, at the time Plaintiff's Motion was filed on
December 16, 2022, the spin-off transaction was complete, and Meta had already
cancelled the MMTLP shares.  *See* Next Bridge Press Release, *supra; see also* Next
Bridge FAQs, *supra*.  Thus, the events that occurred before Plaintiff filed Plaintiff's
Motion render the relief that she seeks in the motion moot.  Finally, FINRA is unable
to reinstate the MMTLP symbol, which FINRA deleted on December 13, 2022,
because the MMTLP shares no longer exist, and the mere existence of the MMTLP
symbol would not result in a reissuance of the MMTLP shares by Meta.

For these reasons, Plaintiff cannot meet her burden of establishing that any
purported injury would be remedied by the requested relief.

## V.   Issuance of a TRO Would Not Serve the Public Interest

Plaintiff has not demonstrated how the issuance of preliminary injunctive
relief would serve the public interest.  As discussed above, the transaction resulting
in Meta's cancellation of the MMTLP shares has been finalized, and the issuance of
any injunctive relief would not change that outcome.  Further, Plaintiff's assertion
that she "and other retail investors have millions of [MMTLP] shares with [the]

intention to trade and transfer brokerages until the noticed date of deletion," Compl. ¶ 73, ECF No. 6, belies the fact that Plaintiff's Complaint was not filed on behalf of other retail investors, the MMTLP shares no longer exist, and the MMTLP symbol was deleted on December 13, 2022.  Thus, Plaintiff has failed to meet her burden of establishing that a Temporary Restraining Order would serve the public interest.

## CONCLUSION

For the reasons stated herein, Plaintiff's Motion for Temporary Restraining Order should be denied.

Respectfully submitted,

*/s/  David S. Mandel*
David S. Mandel
  FBN 38040
MANDEL & MANDEL LLP
169 East Flagler Street, Suite 1224
Miami, Florida 33131
Telephone: (305) 374-7771
dsm@mandel.law

*Counsel for Defendant,*
*Financial Industry Regulatory Authority, Inc.*

21

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 5th day of January 2023, the foregoing document was emailed to the plaintiff at roza@erchidlaw.com.

*/s/  David S. Mandel*

## CERTIFICATION PURSUANT TO N.D. FLA. LOC. R. CIV. P. 7.1(F)

Pursuant to Local Rule 7.1(F), N.D. Fla., I hereby certify that the foregoing Memorandum in Opposition to Plaintiff's Motion for Temporary Restraining Order contains 4764 words, inclusive of headings, footnotes, and quotations, but exclusive of the case style, signature block and Certificate of Service. Consistent with Rule 7.1(F), I am relying upon Microsoft Word for the word count provided in this Certification.

*/s/  David S. Mandel*